IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. BLOCKQUOTE, INC.,<br><br>    Plaintiff-Relator,<br><br>v.<br><br>SW NORTH AMERICA, INC.,<br><br>    Defendant. | Case No. _____<br>**FILED UNDER SEAL** |

# **COMPLAINT**

1. Relator Blockquote, Inc. ("Relator") brings this action on behalf of itself and the United States of America against defendant SW North America, Inc. for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2. This action seeks to recover funds that were loaned to Defendant through the federal Government's Paycheck Protection Program ("PPP") and forgiven by the Government as a result of false applications.

3. SW North America Inc., a subsidiary of German company Schwäbische Werkzeugmaschinen, received a Second Draw PPP loan of over $1.2 million with full forgiveness.

4. Under the SBA's affiliation rules—which were clarified in May

2020 to include domestic and foreign affiliates—SW North America, Inc. should have included both its own employees and those of its affiliates when considering eligibility. Had they been included, SW North America, Inc. would not have been eligible for Second Draw PPP funding.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as the defendant resides or transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

7. Defendant SW North America, Inc. ("SW North America") is located at 30160 Lyon Industrial Ct, New Hudson, MI 48165.

8. SW North America is a wholly owned subsidiary of Schwäbische Werkzeugmaschinen GmbH ("SW"). SW primarily develops, produces, sells and services machining centers for single- and multi-spindle machining of cubic workpieces. SW North America was founded in 2012

to be SW's sales and service company for North America.

9. Süddeutsche Beteiligung GmbH is a German company that is required to prepare consolidated financial statements in accordance with Section 290 of the German Commercial Code (HGB). Its 2019-2021 consolidated financial statements are cited herein as the "Annual Reports." Citations and quotes from the Annual Reports are translated from German.

10. According to the Annual Reports, Süddeutsche Beteiligung GmbH holds 100% of SW Holding GmbH ("SW Holding"), which in turn owns 100% of SW and 93.9% of Schwäbische Werkzeugmaschinen Immobilien GmbH ("SW Immo"), all of which are located in Germany.

11. According to the 2019 and 2021 Annual Reports, SW Holding is the sole or majority shareholder of the companies listed below and does not carry out any other operational activities with the exception of managing the shareholdings in SW and SW Immo: SW North America; SW Immo; SW Automation GmbH; SW Asia Co., Ltd. (China); SW Chongqing Co., Ltd. (China); SW Mexico S. de RL de CV; SW Italia SRL; SW France SAS; and SW Polska Sp. z oo (Poland) (excluding SW Immo, collectively, the "SW subsidiaries").

12. The 2020 Annual Report indicates that SW subsidiaries[1] are actually owned by SW rather than SW Holding. Upon information and belief, this is the more accurate description: that SW Holding wholly owns SW, which is the principal owner of the various SW subsidiaries.

13. For purposes of this action—which alleges that SW North America's affiliation with SW results in it being ineligible for a Second Draw loan—it is only necessary to show that SW North America is affiliated with SW. This can be accomplished either via direct ownership (i.e., SW owns SW North America) or via a common parent (i.e., SW Holding owns both SW and SW North America).

14. Blockquote, Inc. is a company based in California that produces public interest research, news reporting and investigations.

## THE PAYCHECK PROTECTION PROGRAM

15. During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small

---

[1] SW Immo is merely the owner of the commercial property rented by SW, and so, upon information and belief, has few, if any, employees of its own.

Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

16. Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

17. The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

18. The Economic Aid Act (P.L. 116-260, in the Consolidated Appropriations Act of 2021), authorized and funded a Second Draw PPP Loan program.

19. For Second Draw PPP Loans, lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the amount

of five (5) percent for loans of more than $50,000 and not more than $350,000, and in the amount of three (3) percent for loans above $350,000.

20. Each borrower certified on the Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

21. Borrowers were later able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities during either the 8- or 24- week period after disbursement.

## FACTUAL ALLEGATIONS

22. When the PPP rules were first introduced, there was confusion regarding whether applicants with foreign affiliates were supposed to include their employees or revenues when considering eligibility. On May 5, 2020, the SBA issued guidance in one of the program FAQs indicating that foreign employees were included in the affiliation count, and on May 21, 2020, an Interim Final Rule was published that again clarified that foreign employees were to be included. 85 Fed. Reg. 30835, 30836. However, because the rule had been previously unclear,

the SBA exercised enforcement discretion to not find a borrower ineligible under this calculation including foreign employees if it applied for the PPP loan prior to May 5, 2020. *Id.* at 30837.

23. SW North America, Inc. was approved for a First Draw PPP loan of $941,200 by Comerica Bank on April 28, 2020. It reported 69 jobs. The amount of the loan that was forgiven was a total of $948,442. Because the loan application was submitted during the safe harbor, it was not required to include employees of foreign affiliates.

24. SW North America, Inc. was approved for a Second Draw PPP loan of $1,204,400 by Comerica Bank on March 16, 2021. It reported 70 jobs. This loan, plus interest, was forgiven, for a total of $1,210,556.

25. SW North America was not eligible for the Second Draw loan because, when including affiliated entities, it exceeded the requisite size standard.

A. **APPLICATION OF THE AFFILIATION RULES TO FOREIGN ENTITIES**

26. A business was eligible for a Second Draw PPP Loan if the business had 300 or fewer employees or met another limited exception, none of which applies to SW North America.

27. When multiple entities are operated under common ownership or

management, the SBA generally applies "affiliation rules" that require the various entities to consolidate their employee count when evaluating their loan eligibility.

28. Under the Interim Final Rule published and effective May 21, 2020, "Paycheck Protection Program—Treatment of Entities With Foreign Affiliates," the SBA clarified that:

> SBA's affiliation rules provide that in determining an entity's number of employees, employees of the entity "and all of its domestic and foreign affiliates" are included. As a result, in most cases, a borrower is considered together with its U.S. and foreign affiliates for purposes of determining eligibility for the PPP…. To provide further clarification of this methodology, SBA issued guidance on May 5, 2020 (FAQ 44) stating that an applicant must count all of its employees and the employees of its U.S. and foreign affiliates, absent a waiver of or an exception to the affiliation rules.

85 Fed. Reg. 30835, 30836.

29. The Interim Final Rule, Section I, concluded, unequivocally, that "If an applicant, together with its domestic and foreign affiliates, does not meet the 500-employee or other applicable PPP size standard, it is not eligible for a PPP loan." *Id.*

30. The Interim Final Rule repeated this requirement again in Section II:

> Therefore, to calculate the number of employees of an entity for purposes of determining eligibility for the PPP, an entity

-8-

> must include all employees of its domestic and foreign affiliates, except in those limited circumstances where the affiliation rules expressly do not apply to the entity. Any entity that, together with its domestic and foreign affiliates, does not meet the 500-employee or other applicable PPP size standard is therefore ineligible for a PPP loan.

*Id.* at 30836-37 (footnote omitted).

31. This foreign affiliation rule applied to all PPP loans applied for on or after May 5, 2020. *Id.*

32. The Second Draw PPP program adopted, in relevant part, these same affiliation rules, except that the employee count was reduced from 500 to 300, as was consistent with the change in the general eligibility requirements. 86 Fed. Reg. 3712, 3714-15 (January 12, 2021), codified in 13 C.F.R. § 121.

B. **AFFILIATION RULE WAIVER REQUIREMENTS**

33. Accordingly, to avoid affiliation, SW North America would have to meet one of three affiliation rule waiver requirements.

34. Pursuant to 86 FR 3712, 3714-15 (Jan. 14, 2021), the affiliation rules are waived under the PPP program for any of the following three reasons: (1) any business concern with less than 300 employees that, as of the date on which the loan is funded, is assigned a North American Industry Classification System (NAICS) code beginning with the digits

-9-

72; (2) any business concern operating as a franchise that is assigned a franchise identifier code by the U.S. SBA; and (3) any business concern that "receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958," *i.e.*, a "small business investment company." "Financial assistance" includes any type of financing listed in 13 C.F.R. § 107.50, including loans and equity. Paragraph 7(a)(36)(D)(iv) of the Small Business Act (15 U.S.C. 636(a)(36)(D)(iv)).

35.     Upon information and belief, none of these waivers apply. SW North America was not assigned a NAICS code for a food and beverage business, nor has it been assigned a franchise identifier code. It is also extremely unlikely that a company founded and held by a multinational conglomerate would have applied for SBIC lending.

C.  **SW NORTH AMERICA WAS AFFILIATED WITH SW AND THE OTHER SW SUBSIDIARIES**

36.     Under the SBA's PPP Affiliation Rules: "Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists."

37. SW North America was affiliated with the other SW subsidiaries under the ownership test.

38. The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

39. As discussed above, upon information and belief, SW is the sole member or majority shareholder of the various SW subsidiaries, including SW North America.

40. Alternatively, SW and the SW subsidiaries share a common owner—SW Holding.

41. Either way, SW, SW North America, and the SW subsidiaries are affiliated.

## D. APPLICATION OF THE ELIGIBILITY TEST

42. Eligibility under the Second Draw PPP loan program is limited to entities that have 300 employees or fewer, including affiliates.

43. On its First Draw loan application, SW North America reported 69

jobs. On its Second Draw loan application, SW North America reported 70 jobs.

44. Upon information and belief, the reported numbers were limited to the Michigan entity and did not include employees of foreign affiliates. For example, SW North America reports on its website currently having 105 employees, and it reported having 84 employees in June 2022.

45. However, according to the Annual Reports, Süddeutsche Beteiligung GmbH employed an average of 1,102 people in 2019; 1,100 people in 2020; and 1,014 people in 2021. These numbers include parent company SW and the SW subsidiaries, including SW North America.

46. The majority of the employees are at SW headquarters in Schramberg-Waldmössingen, which currently reports on its website having 850 employees and reported the same number of employees in August 2022.

47. Thus, upon information and belief, simply by adding parent company SW's employee count to SW North America's, the total exceeded the 300-employee limit for Second Draw loan eligibility.

48. The various SW affiliates also employed dozens of employees that

should have been included in SW North America's headcount.

## FALSE CERTIFICATIONS

49. Version 1 of the Second Draw PPP Borrower Application Form, effective January 8, 2021, required the applicant to certify in good faith that, *inter alia*:

   a. The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

   b. The Applicant, together with its affiliates (if applicable)... employs no more than 300 employees…

   c. I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

50. Later versions of these applications contained similar

certifications.

51. The loan application also required applicants to report "Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception applies)."

52. SW North America had to make these certifications when applying for the Second Draw PPP loan. These certifications were false when made because it failed to adequately disclose the employees of its foreign affiliates.

## CONCLUSION

53. SW North America was not eligible for the Second Draw funding because, including its affiliates, it exceeded the 300-employee limitation.

54. SW North America should be required to repay its Second Draw PPP loan and interest that was forgiven by the federal government, plus processing fees and penalties.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729
## FALSE CLAIMS ACT

55. Relator hereby incorporates and realleges all other paragraphs as if fully set forth herein.

56. As set forth above, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

57. As set forth above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

58. Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. 31 U.S.C. § 3729.

59. Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a maximum civil penalty for each of the false claims and statements;

(c) awarding Relator the maximum relator's share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs and reasonable attorneys' fees and expenses; and

(e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,

/s/ Jason Marcus
Jason Marcus
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
Telephone: (770) 988-5035
Facsimile: (678) 648-5544
Jason@fcacounsel.com

Matthew J. Turchyn (P76482)
**Hertz Schram PC**
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
(248) 335-5000
mturchyn@hertzschram.com